STRINGFELLOW

*v.*

WISE *et al.*

(*Supreme Court of Appeals of Virginia, April 15, 1897.*)

[27 S. E. Rep. 432.]

**Proposed Partnership—Transactions on Account of—Injunction of—Method of Accounting—Case at Bar.**

In anticipation of an agreement for a limited partnership, under Code, § 2878, transactions occurred on account of the proposed firm, and advances of labor, material, and money were made for its benefit, but the agreement was never consummated: *held*, on a bill by one of the proposed partners to enjoin the conduct of the proposed business by the others in the firm name, no rights of creditors being involved, that there was no partnership, and the use of the firm name should be enjoined, but that an accounting should be had on principles analogous to those adopted in winding up a common-law partnership, and the several parties put as far as possible in statu quo; to which end an accounting was properly ordered of advances made for the benefit of the firm and the value thereof, of any property acquired or profits made by the co-operation of the parties in the use of the means contributed, and of all property contributed in anticipation of the partnership which remained in kind, together with its value and the value of its use, and any damage which might have been done it in such use.

Appeal from circuit court, Culpeper county.

Bill by George S. Stringfellow against Charles H. Long, W. H. Wise, and others, for injunction. From the decree entered, plaintiff appeals. Affirmed.

*J. C. Gibson* and *Hay & Jeffries*, for appellant.

*Rixey & Barbour*, for appellees.

CARDWELL, J., delivered the opinion of the court.

The appellant, George S. Stringfellow, and appellees Charles
H. Long and W. H. Wise, on the 23d of February, 1891, had
negotiations with each other looking to the formation of a lim-
ited partnership, or a partnership association, with the view of
conducting the business of making and burning brick at or
near the city of Fredericksburg, and a memorandum of the
agreement between them was at the time made in writing, but
was not signed by either party. This memorandum was after-
wards carried by the parties to an attorney, who advised them
that a partnership association under section 2878 of the Code
was what they apparently desired to enter into, to which they
agreed, and this attorney was authorized to prepare such a
contract, which he did, and delivered it to Stringfellow, which
also was never signed by the parties. Neither of these unsigned
agreements stated specifically how much each party was to
contribute to the partnership enterprise, but indicated that they
were to contribute about the sum of $1,000, either in money
or machinery and implements needed in the business; and, on
the same day that the first agreement was talked of and a
memorandum of it made, Stringfellow made an agreement in
writing by which he was to sell to Wise, Long & Stringfellow
an engine and boiler complete, together with other implements
and fixtures therewith, to be used in the manufacture of brick,
and to be delivered by Stringfellow at Fredericksburg on or
before the 20th of March, 1891; that is, he was to deliver the
boiler free of charge, and the new firm to deliver the residue
of the outfit. For this outfit Stringfellow was to be allowed
$850 as part of the capital to be furnished by him in the pro-
posed business. He did not, however, deliver the boiler as
agreed till some time in May, but then delivered the whole
outfit at Fredericksburg, Wise and Long agreeing to pay him
for that portion which the firm had agreed to remove to Fred-
ericksburg. During this delay Wise and Long had commenced

and were prosecuting the work of making brick with such machinery and implements as they had furnished, and had made considerable progress before Stringfellow delivered his engine and boiler as he had agreed; and shortly after he delivered this machinery, and when it had only been used 10 or 12 days, Stringfellow notified Wise and Long that they were not to use his engine and boiler any further, as he did not regard himself a partner in the business. Wise and Long, however, continued to prosecute the work of making brick, Stringfellow not going to their place of business except at long intervals, contending that he was not a partner, and declining to enter any further into the business. On the 10th of August, 1891, Stringfellow filed his bill in the circuit court of Culpeper county against Charles H. Long, W. H. Wise, and Conrad Long, claiming that the latter was a silent partner in the business being conducted by Long and Wise, and obtained an injunction to restrain the defendants from further making, selling, or manufacturing brick at or near Fredericksburg, whether conducting the business under the name of Long, Wise & Stringfellow, or that of the Fredericksburg Brick Company.

The defendants immediately answered the bill, and after notice to the plaintiff moved the judge of the circuit court in vacation, August 17, 1891, to dissolve the injunction, which motion was overruled, though the court required the plaintiff to give an increased bond. Depositions were then taken by both parties, and on October 10, 1891, the cause came on again to be heard in vacation, on motion to dissolve the injunction. Whereupon the judge of the circuit court, for reasons stated in writing and made a part of the decree, dissolved the injunction in part and directed certain accounts to be taken. The judge held that an agreement between plaintiff and the defendants looking to the formation of a limited partnership was entered into the 23d day of February, 1891, but was never consummated; that, in anticipation of the consummation of such a partnership, transactions were had on account of the

proposed partnership, and advances in the shape of labor, materials, and money made for the use and benefit of the proposed partnership, and certain property and property rights were acquired by it; that, though plaintiff and defendants might be liable as partners to creditors, if any there were, yet as between themselves no partnership actually existed, but their rights, growing out of advancements and labor for the benefit of the proposed partnership, would have to be settled between themselves upon principles analogous to those adopted in winding up a common-law partnership, and the partners themselves would have to be put, as far as possible, in statu quo. To this end the decree of the court appointing a receiver in the cause theretofore entered was set aside, upon the condition that the defendants enter into bond, in the penalty of $1,000, conditioned to restore to plaintiff any property in kind that may have come into their possession, and to pay to plaintiff any sum that might be found due from them, or either of them, to him, upon the settlement of the accounts directed, and the following accounts were directed : An account of the advancements made by either party in money, labor, or materials for the benefit of the proposed partnership, and the value thereof ; an account of any property acquired or profits from business made by the co-operation of the said parties in the use of the property or means contributed ; and an account of all property contributed by either of the parties in anticipation of the proposed partnership which remains in kind, together with its value and the value of its use, and any damages which may have been done it in such use. This decree also perpetuated the injunction so far as it restrained the defendants from using the firm name of Wise, Long & Stringfellow, and dissolved it in all other respects.

In response to the decree of reference one of the commissioners of the court, Edwin Gibson, after taking the depositions of witnesses introduced by the plaintiff and defendants, filed his report, on June 3, 1892, of the accounts stated by

him as required by the decree, and this report by consent of parties was immediately recommitted to this commissioner. On September 9, 1892, this commissioner made another report, in which all of the accounts between the parties required by the decree of reference are fully stated.   By these accounts it was shown that Stringfellow was indebted to the partnership in the sum of $494.04, of which sum $407.53 was due to C. H. Long for the benefit of Conrad Long, and $86.51, the residue, to W. H. Wise.

To this report the plaintiff filed a number of exceptions, and the report was recommitted to T. E. Grimsley, another commissioner of the court, to take, state, and report the accounts theretofore ordered, and twice before stated and reported by Commissioner Gibson ; Commissioner Grimsley being directed to state the accounts upon the evidence then in the record and upon such as might be thereafter offered by either party.

On March 23, 1894, Commissioner Grimsley made report that after a careful examination of the evidence in the cause he could make no change in the report of Commissioner Gibson, and therefore requested the court to accept this report of Commissioner Gibson as his own, as he (Grimsley) believed it right in all respects.

To this report the plaintiff renewed his exceptions filed to the report of Commissioner Gibson, but they were all overruled, and the report of Commissioner Gibson of September 9, 1892, as well as that of Commissioner Grimsley, was confirmed, and a decree entered against the plaintiff in favor of W. H. Wise for the sum $86.51, with interest from September 9, 1892, and in favor of Conrad Long for the sum of $407.53, with like interest.

From this decree an appeal and supersedeas was awarded by one of the judges of this court.

We are of opinion that the decree of October 10, 1894, cor-

rectly settled the principles of the cause, and that no injustice was done the plaintiff thereby.

We are further of opinion that the accounts of the transactions between the parties, thrice reported to the court below by its commissioners, are made in accordance with the decree of October 10, 1891, and sustained by the evidence in the cause. These transactions were complicated and confused, the evidence adduced by the parties voluminous and complicated, and we are unable to find, after a careful examination, any reason for disturbing the adjustment and settlement of these transactions as made by the circuit court.

The decree appealed from must be affirmed.